**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**



MARINA ONE, INC.
d/b/a JOYS MARINA,

ARCHIE F. ALLEN,

and

LINDA ALLEN

      Plaintiffs,

      v.                            **CIVIL ACTION NO. 4:13cv117**

JEAN JONES,

      Defendant.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant Jean Jones' Motion to Dismiss.  Dkt. No. 6.  Plaintiffs, who are a marina and its owners, filed a Complaint against Defendant, an owner of a boat berthed at the marina whose husband is involved in ongoing state court litigation against Plaintiffs for an injury sustained at the marina.  Plaintiffs cite federal admiralty jurisdiction and allege that Defendant breached a wharfage contract.  They also seek a declaration that she is obligated to indemnify Plaintiffs in the state court action under that contract and raise other state law tort claims.  Defendant seeks dismissal of their Complaint on numerous grounds.  For the reasons stated below, Defendant's Motion to Dismiss is **DENIED IN PART AND DEFERRED IN PART**.  Further, Plaintiffs Archie and Linda Allen are **GRANTED** leave to amend the Complaint to sufficiently plead their connection to the contract and tort claims within **FIFTEEN (15) DAYS**

1

of the date of entry of this Order. Defendant is **ORDERED** to provide notice of this suit and a copy of this Order to Mr. Jones within **FIVE (5) DAYS** of the date of the entry of this Order and provide certification to the Court of her compliance.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts alleged in the Complaint are as follows. Plaintiff Marina One, Inc. is a Virginia corporation and the lessee and operator of Joys Marina in Hampton, Virginia ("the Marina"). Compl. ¶ 4. Plaintiffs Archie and Linda Allen own the property where the Marina is located and lease it to Marina One. Compl. ¶ 5. Defendant Jean Jones is the co-owner of a 44-foot Sea Ray vessel that was docked at the Marina. The other owner of the vessel is Defendant's husband, Rick Jones. Compl. ¶ 7. He has filed suit in state court against the Plaintiffs and alleges that in May 2012, he suffered personal injury while disembarking from their vessel at the Marina. Compl. ¶ 18.

Attached to the Complaint is a Slip Lease Agreement ("the Agreement") signed on June 27, 2011, and providing for the dockage of the Jones' vessel at the Marina between July 1, 2011 and June 30, 2012. Rick Jones is listed as the "Lessee," but the Agreement was signed by Defendant. Above her signature is a certification that the person signing "is the owner of the vessel hereinabove described or is authorized to subj[e]ct such vessel to the provisions of this contract." Dkt. No. 1-1 at 3. Notably, the Agreement provides that the lessee is required to obtain indemnity insurance in the amount of $300,000 and to list the Marina as an additional insured. Compl. ¶ 11. However, when Plaintiffs raised this clause as a defense in Mr. Jones' state court suit, he claimed that he was not bound by the Agreement because Defendant was not authorized to sign the Agreement on his behalf. Compl. ¶ 19.

Plaintiffs now raise five claims against Defendant.   Count 1 is a claim for declaratory relief, and alleges that Defendant had the authority to bind herself to the Agreement as the owner of the vessel.   As such, she is obligated to indemnify the Marina in her husband's state court suit. Count 2 is a breach of contract claim, and alleges that Defendant breached numerous clauses of the Agreement, such as the requirement to maintain the pier in a safe condition and to defend and indemnify the Marina.   Count 3 and 4 are actual and constructive fraud claims, and are raised in the alternative to Counts 1 and 2.   (Count 4 is also raised in the alternative to Count 3).   They allege that Defendant fraudulently misrepresented that she had the authority to sign the Agreement.   Finally, Count 5, also raised in the alternative to Counts 1 and 2, alleges that Defendant breached the warranty of authority that she made to the Marina.

On October 11, 2013, Defendant filed a Motion to Dismiss on numerous grounds.   On October 29, 2013, Plaintiffs filed their Opposition.   On November 7, 2013, Defendant filed her Reply.   The matter is accordingly fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Defendant's Motion to Dismiss is based on Federal Rule of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction), 12(b)(6) (failure to state a claim upon which relief can be granted), and 12(b)(7) (failure to join a party under Federal Rule of Civil Procedure 19).   Rule 12(b)(1) provides for the dismissal of an action if the court lacks subject matter jurisdiction over a claim or the cause of action as a whole.   The Court assumes that all factual allegations in the complaint are true where the opposing party contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based.   *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).   If the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter

jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at 1219, or whatever other evidence has been submitted on the issue. *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. *See* Fed. R. Civ P. 12(b)(6). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (internal quotations omitted)). Specifically, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, at the motion to dismiss stage, the Court is bound to accept all of the factual allegations in the Complaint as true. *Id.* at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 12(b)(7) provides for dismissal where a party has not been joined as required by Rule 19. The party asserting the Rule 12(b)(7) defense bears the burden of showing that a person not joined is necessary and indispensable pursuant to Rule 19. *Am. Gen. Life & Accident Ins. Co. v.*

*Wood*, 429 F.3d 83, 92 (4th Cir. 2005).   A court addressing such a defense may consider evidence presented outside of the pleadings.   *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007).

### III. ANALYSIS

The Court will first address Defendant's arguments that pertain to all of the claims in the Complaint, and then turn to those arguments that are specific to certain individual counts. Collectively, Defendant contends that the Court lacks subject matter jurisdiction, that the Allens should be dismissed as plaintiffs, and that Plaintiffs have failed to join a necessary party. Individually, she contends that the breach of contract and declaratory judgment claims (Counts 1 and 2) should be dismissed for failure to state a claim, that the Court should abstain from addressing the declaratory judgment claim (Count 1) because of the ongoing state court action, and that the fraud and constructive fraud claims (Counts 3 & 4) fall outside the applicable statute of limitations and have not been pled with the requisite specificity.

**A.  Arguments as to all counts**

**1.  Subject matter jurisdiction**

At various points throughout the Motion to Dismiss and Reply, Defendant contends that the Court lacks subject matter jurisdiction over all of Plaintiffs' claims for various reasons.   Brief in Support of Mot. to Dismiss, Dkt. No. 7 (hereinafter "Mot. to Dismiss"), at 9, 21, 22; Reply at 2-3, 5-6.   Plaintiffs respond that the Court has subject matter jurisdiction simply because there is admiralty jurisdiction over the Declaratory Judgment and Breach of Contract claims (Counts 1 and 2), and that all of the other claims are a proper exercise of supplemental jurisdiction. The Court will first address Plaintiffs' affirmative argument for subject matter jurisdiction.

Pursuant to 28 U.S.C. § 1333(1), the Court has original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." Causes of action arising from maritime contracts fall within this jurisdiction. *See Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 255 (4th Cir. 2009). Whether a contract is maritime is determined not by whether a vessel is involved, or by where the contract was formed. "Instead, the answer 'depends upon . . . the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (quoting *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)). *See also Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 611 (1991) ("[T]he trend in modern admiralty case law . . . is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime."); *Sanderlin v. Old Dominion Stevedoring Corp.*, 385 F.2d 79, 81 (4th Cir. 1967) ("Maritime jurisdiction when founded upon contract depends upon the nature and subject matter of the contract."). The focus of the jurisdictional inquiry is "whether the nature of the transaction was maritime," *Exxon Corp.*, 500 U.S. at 611, and "whether the principal objective of a contract is maritime commerce," *Kirby*, 543 U.S. at 25.

Because the wharfage or dockage of a vessel capable of transit and commerce on navigable waters usually is of a maritime nature, the United States Court of Appeals for the Fourth Circuit has acknowledged that "contracts for wharfage, dockage, and crane rental are maritime." *S. C. State Ports Auth. v. Silver Anchor, S.A., (Panama)*, 23 F.3d 842, 846 n. 3 (4th Cir. 1994). *See also Goodman v. 1973 26 Foot Trojan Vessel, Ark. Registration No. AR1439SN*, 859 F.2d 71, 73 (8th Cir. 1988) ("Contracts . . . providing wharfage to a particular vessel are maritime."). Wharfage is "the fee charged for the temporary use of a dock furnished in the ordinary course of navigation to a ship for the purpose of mooring in safety in order to load and unload cargo, to receive and land

passengers, to make temporary repairs and to refuel, resupply and reprovision." *Howmet Corp. v. Tokyo Shipping Co.,* 320 F.Supp. 975, 978 (D. Del. 1971). *See also Inbesa Am., Inc. v. M/V Anglia*, 134 F.3d 1035, 1038 (11th Cir. 1998) (noting that the term "wharfage" is normally used synonymously with "dockage" and therefore is a maritime service).

The Agreement that is the subject of the Complaint's Breach of Contract Claim is appended as an Exhibit to the Complaint.   Dkt. No. 1-1.   It is a year lease for certain slip at Joys Marina for a Sea Ray boat called "Double Eagle."   Joys Marina is located at 424 E. Queen St., Hampton, Va. 23699, which is on the Hampton River and a short distance from the James River and Chesapeake Bay.   Compl. ¶ 5.   The Agreement specifies the monthly rate to be paid in exchange for the rental of the slip.   It also specifies that the Marina will provide electricity at the slip, requires the Lessee to maintain insurance, outlines relative responsibilities in the event that the vessel or Marina is damaged or if the vessel is improperly moored, sinks, or is on fire.   It provides that the Marina is not responsible for providing police, fire, or other security services.   It also incorporates all of the Rules and Regulations of the Marina.   Dkt. No. 1-1.

Because the Agreement governs the temporary dockage of a vessel at a marina with access to navigable waters, its subject matter is clearly maritime in nature and it is therefore subject to federal admiralty law.   *See Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 715 (8th Cir. 2003) (applying admiralty law to a slip agreement between a yacht club and owners of various boats).   Defendant's only argument against admiralty jurisdiction is that the Agreement is "mixed" because it governs both maritime and non-maritime obligations, and that jurisdiction cannot be exercised in such circumstances.   As a preliminary matter, the rule in some federal Circuit Courts of Appeal that admiralty jurisdiction extends only to contracts that are "wholly" maritime in nature has not been given its full force in the Fourth Circuit, which noted some years

ago that rule was subject to criticism and valid only "when the non-maritime elements of a contract are substantial and inseparable from the maritime elements." *Flota Maritima Browning de Cuba, Sociadad Anonima v. Snobl*, 363 F.2d 733, 735 (4th Cir. 1966). Additionally, the continuing validity of such a rule was placed in serious doubt in *Kirby*, where the Supreme Court noted that as long "as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." 543 U.S. at 27. *See Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1218-19 (9th Cir. 2007) (noting that *Kirby* undercut the "purely maritime" rule and that the dispositive question is instead whether the principal objective of the contract is maritime commerce). In this case, any non-maritime elements in the Agreement are only incidental to the primary and maritime nature of the Agreement.

The Court also has jurisdiction over the remaining four counts of the Complaint. Count 1 seeks declaratory relief regarding the obligations of the parties to the Agreement. The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." However, it is well settled that the Act does not itself provide an independent basis for federal jurisdiction and is procedural and remedial only. *E.g., Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*, 118 F.3d 205, 210 (4th Cir. 1997). But Count 1 seeks a declaration of the parties' rights under a maritime contract; accordingly, it also arises under maritime law and falls within this Court's admiralty jurisdiction. *E.g., Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307 (2d Cir. 2005).

The other three counts in the Complaint are raised in the alternative to Counts 1 and 2, and are claims of fraud, constructive fraud, and breach of warranty of authority stemming from

Defendant's alleged misrepresentation in signing the Agreement. These are tort claims, but Plaintiffs do not contend that they are maritime torts giving rise independently to maritime jurisdiction. Instead, they rely on 28 U.S.C. § 1367(a), which provides that a court has supplemental jurisdiction over claims "that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Claims are considered part of the same case or controversy when they "derived from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Although the tort claims center primarily on the formation of the maritime contract and the contract claims primarily on its execution, all claims revolve around the actual or attempted formation of the Agreement and are therefore likely to involve largely the same evidence and parties. For these reasons, the Court finds that it has supplemental jurisdiction over Counts 3, 4, and 5.

However, supplemental jurisdiction is discretionary, and a district court may decline to exercise it for any of the four reasons enumerated in 28 U.S.C. § 1367(c). At this juncture, the Court finds that none of these four reasons are applicable and that the principles of "convenience and fairness to the parties, . . . underlying issues of federal policy, comity, and considerations of judicial economy," *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), support addressing all of Plaintiffs' claims in a single suit. Defendant points out that the common law claims are explicitly raised in the alternative to the admiralty claims, so that if Plaintiffs are unsuccessful on Counts 1 and 2, only the common law claims would remain. Nonetheless, it would be premature to decline to exercise supplemental jurisdiction while the admiralty claims are still viable. The Court will consider any arguments pursuant to § 1367(c)(3), which allows a court to decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has

original jurisdiction," when, and if, Counts 1 and 2 are dismissed.

For these reasons, as long as the maritime contract claims are not dismissed for some other reason discussed below, the Court has supplemental jurisdiction over the other claims and therefore subject matter jurisdiction over all claims.    Therefore, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

### 2.  Dismissal of the Allens' Claims

Defendant contends that the claims of the Allens should be dismissed because there is no allegation in the Complaint that Defendant owed them a duty either in contract, warranty, or tort. Mot. to Dismiss 6-9; Reply 3-8.   As Defendant highlights, the Complaint substantively mentions the Allens only twice, stating 1) that they own the property where the Marina is located and lease it to Marina One, Inc. for the purposes of operating Joys Marina, ¶ 5, and 2) are and were agents of Joys Marina, ¶ 6.   It does not allege that they were parties to the contract or that Defendant was otherwise financially liable to them (or vice versa).   Plaintiffs respond that they are properly parties to this suit because they face individual liability in the state court suit, apparently either as directly liable parties as owners of the Marina, or as actual parties to the Agreement if the corporation of Joys Marina is deemed a sham.   In addition, they contend, they might be third party beneficiaries to the contract.   In the alternative, they request that the Court allow them leave to amend the Complaint to allege the duties Defendant owes to the Allens.

Plaintiffs have explained why they have constitutional standing to bring this suit, as the federal suit could redress injuries sustained in the state court suit brought by Defendant's husband. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013) (outlining the requirements for Article III standing).   However, they have not sufficiently pleaded in the Complaint why Defendant would be potentially liable to them rather than the Marina either in tort or pursuant to

10

the Agreement.  *See generally* 13 Williston on Contracts § 37:1 (4th ed. 2013) (describing that

generally, only parties to a contract or third party beneficiaries may sue to enforce it); Peter Nash

Swisher, *et al.*, Va. Prac. Tort and Personal Injury Law § 10:5 (2013) (describing the elements of a

constructive fraud claim).   Accordingly, the Court **DEFERS** ruling on Defendant's Motion to

Dismiss as to the Allens.   The Allens are **GRANTED** leave to amend the Complaint to

sufficiently plead their connection to the contract and tort claims within **FIFTEEN (15) DAYS** of

the date of entry of this Order.   Because the admiralty claims the Marina brought remain, subject

matter jurisdiction is unaffected and the Court may proceed to address the rest of Defendant's

arguments.[1]

### 3.  Failure to join a necessary party

Defendant's third argument that affects all of Plaintiffs' claims is that the Complaint

should be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).   She

contends that her husband, Rick Jones, is a required party pursuant to Federal Rule of Civil

Procedure 19(a):

> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will
> not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> **(A)** in that person's absence, the court cannot accord complete relief among
>> existing parties; or
>> **(B)** that person claims an interest relating to the subject of the action and is so
>> situated that disposing of the action in the person's absence may:
>>> **(i)** as a practical matter impair or impede the person's ability to protect the
>>> interest; or
>>> **(ii)** leave an existing party subject to a substantial risk of incurring double,
>>> multiple, or otherwise inconsistent obligations because of the interest.

---

[1] Defendant also includes a footnote alluding to the possibility that Marina One, Inc. may not be a proper party.   The
Court will not address an argument made only in a footnote and that does not take a position but only notes that the
issue is "ambiguous."   Mot. to Dismiss at 10 n.1.   Such an argument is not properly raised.

"Rule 19(a)(1)(A) focuses on the relief to existing parties, whereas Rule 19(a)(1)(B) focuses on the interest of the absent person and the effect, if any, his absence would have on either himself or the existing parties." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008).   Defendant does not state explicitly whether she relies on Rule 19(a)(1)(A) or Rule 19(a)(1)(B), but her explanation for why Mr. Jones must be joined focuses on the prejudice to him, implying that she is relying on the second part of Rule 19(a)(1).   *See* Mot. to Dismiss 13 ("The rulings sought by the plaintiffs in this declaratory judgment action and breach of contract would by implication prejudice Rick Jones['] relief in the state court action.").

Although it does not appear that Defendant relies on Rule 19(a)(1)(A), the Court will nonetheless address that prong for the sake of completeness.   Mr. Jones' presence is not required to "accord complete relief among existing parties."   Plaintiffs seek either damages in tort from Defendant for fraudulently representing that she could form the Agreement when she could not, or a finding that she did indeed form the Agreement and is therefore obligated to indemnify Plaintiffs in the state court action.   Mr. Jones' presence is not necessary to accord Plaintiffs either form of relief.

Rule 19(a)(1)(B) has two sub-parts, either of which is sufficient to require joinder, but a prerequisite to both is that Mr. Jones "claims an interest relating to the subject of the action."   The Court has found little precedent addressing what it means to "claim" a relevant interest, but the precedent that exists interprets that requirement narrowly, usually requiring some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter.   *E.g.*, *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) ("Here, [the absent party] was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was 'unnecessary.'"); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 483-84 (7th Cir.

2001). In this case, Mr. Jones has not filed any sort of statement in this Court, but he has filed a tort action in state court that indirectly implicates the Agreement at issue here. His suit there did not affirmatively or directly raise the issue of the validity of the Agreement that is at stake here, but in his Response to Plaintiffs' Answer, he effectively denied being a Lessee under the Agreement. Dkt. No. 10-1. While this certainly implicates any interest he might have in the instant suit, the Court concludes that it does not rise to the level of affirmatively claiming an interest.

A comparison between two Fourth Circuit cases is instructive. In *American General Life & Accident Insurance Co. v. Wood*, 429 F.3d 83, 93 (4th Cir. 2005), the absent party was a defendant in a state court suit that, like the underlying state court suit here, implicated liability issues in the federal court action but was not directly parallel to it. The Fourth Circuit found no error in the district court's holding that the absent party had not claimed an interest in the federal suit. In *National Union Fire Insurance Co. of Pittsburgh, PA v. Rite Aid of S. Carolina, Inc.*, 210 F.3d 246, 251 (4th Cir. 2000), the absent party had decided to file a parallel state court action raising the exact issue that was the subject matter of the federal action. The Fourth Circuit did not directly address the issue of claiming an interest, but noted that the party disputing joinder had conceded that the absent party had claimed an interest, and ultimately found that the district court did not err in finding that the parent company was a necessary and indispensable party. The Court concludes that although he is a plaintiff in the state court action, Mr. Jones is most similar to the absent party in *Wood*. Although he did initiate a state court action, he did not directly and affirmatively raise the subject matter of the instant federal litigation.

Plaintiffs chose not to name Mr. Jones as a defendant, and Defendant has to date not sought to implead Mr. Jones. Given the extensive but unused tools available to both of the existing parties to the litigation to bring Mr. Jones into the suit, the Court is reluctant to find that Mr. Jones

13

must be joined absent an affirmative indication of interest from him. Moreover, as the party advocating joinder, Defendant has the burden of showing that Mr. Jones is a required party. *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 92. Defendant has not even addressed in what way Mr. Jones has claimed an interest relating to the subject of this action; nor has she stated whether or not Mr. Jones is aware of this action. Nonetheless, because the instant suit could undoubtedly implicate Mr. Jones' interests, Defendant is **ORDERED** to provide notice of this suit and a copy of this Order to Mr. Jones within **FIVE (5) DAYS** of the date of the entry of this Order and certify to the Court that she has done so. If the Court has not received an indication of interest from Mr. Jones within **FOURTEEN (14) DAYS** of the date of that certification, the Court will assume that Mr. Jones does not wish to claim an interest in this action and will deny Defendant's Motion to Dismiss under Rule 12(b)(7).

It is unnecessary at this juncture to address the rest of Rule 19(a)(1)(B) or to rule on Defendant's Motion to Dismiss under Rule 12(b)(7). That ruling is therefore **DEFERRED**. The Court does note, however, that even if it finds that Mr. Jones must be joined, Rule 19(a)(2) directs the Court to "order that the person be made a party" unless their joinder is not feasible, and only then consider whether the action should be dismissed. There is currently no indication that Defendant's joinder would not be feasible if required.

**B. Arguments as to individual counts**

    **1. Counts 1 & 2 (Maritime contract claims): Failure to state a claim**

At multiple points throughout her Motion to Dismiss, Defendant argues that Counts 1 and 2 should be dismissed because there is no case or controversy between Plaintiffs and herself, the sole defendant. Instead, she contends, the only real dispute is between Plaintiffs and Defendant's husband, Rick Jones, the listed Lessee on the Agreement. Defendant maintains that the facts are

insufficiently pleaded to raise an inference that she signed the Agreement in any capacity other than as an agent of her husband.   As such, he, and not Defendant, is bound to the Agreement.

Plaintiffs' theory of relief as to Counts 1 and 2 is that Defendant is in fact a party to the Agreement and is therefore obligated to indemnify them in the state court action.   And the Complaint alleges two key facts, the validity of which Defendant does not contest: that Defendant is an owner of the vessel that was the subject of the Agreement, and that Defendant did in fact sign the Agreement on its final page, over the word "Lessee."   While Mr. Jones is listed as the Lessee elsewhere in the Agreement, this ambiguity is one that will have to be resolved later in this litigation.   The facts that Plaintiffs have pleaded are sufficient to raise a plausible inference that Defendant signed the Agreement in her own capacity, and not as Mr. Jones' mere agent. Accordingly, Defendant's Motion to Dismiss Counts 1 and 2 for failure to state a claim is **DENIED**.

### 2.  Count 1 (Declaratory judgment): Abstention

Defendant also contends that the Court should abstain from resolving the declaratory claim because in the state court, Mr. Jones' personal injury claim presents the same issue raised in the declaratory claim in federal court.   Defendant and Plaintiffs dispute whether to apply the traditional *Colorado River* abstention doctrine, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), which emphasizes the federal courts' "virtually unflagging obligation" to exercise jurisdiction, or a more deferential test applicable to declaratory judgment claims, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994).   Plaintiffs contend that the latter standard is applicable only in an action that raises solely declaratory claims, not a "mixed" action like this one which seeks both declaratory and monetary relief.

The Court need not resolve this dispute, because a prerequisite to either is that the state and

federal actions be "parallel." *E.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281 (1995). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005) (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Turning first to whether the state and federal actions at issue here involve "substantially the same parties," the Court notes that although the plaintiffs in this action are the same as the defendants in the state action, Dkt. No. 1-3, the opposing sides are different.   Mrs. Jones is the defendant in this action, and Mr. Jones is the plaintiff in the state court action.   The Fourth Circuit "strictly construe[s] the requirement of parallel federal and state suits, requiring that the parties involved be almost identical." *Chase Brexton Health Servs.*, 411 F.3d at 464.   Not only are the parties not substantially the same, but the issues involved also lack sufficient similarity.   It is not enough that the state action and the federal declaratory claim "might involve similar issues." *Id.*   Actions are not parallel where "the remedies sought and the issues raised [a]re not the same," and the abstention doctrine does "not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals." *Id.* at 465 (citing *New Beckley*, 946 F.2d at 1074).

As the Court currently understands Count 1 of the Complaint, it asserts that as the owner of the vessel, Defendant had authority to bind herself as the Lessee to the Agreement, did so, and is therefore obligated to indemnify Plaintiffs.   But in the state court action, the plaintiff there has brought an affirmative personal injury claim.   The issue of whether he is bound under the agreement has arisen only as a defense.   That action might potentially be resolved on any number of other grounds other than that defense—grounds that would never arise in the instant suit. Similarly, the declaratory judgment claim might be resolved on multiple grounds—for example,

various indemnity issues or whether Defendant can legally be bound (even assuming she was not acting as her husband's agent) simply by being the vessel's owner.  The only overlapping issue between the federal and state court actions therefore may or may not be reached in the course of each proceeding.  In sum, this is simply not a case where "almost-the-same plaintiffs are suing the same defendants on the same state-law claims." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 249 (4th Cir. 2013) (footnote omitted).

Finally, the Court notes that even if the actions were considered parallel, it is rarely appropriate to abstain from addressing a declaratory claim when it must proceed on intertwined claims.  "[W]hen a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay would not save any judicial resources." *Chase Brexton Health Servs.*, 411 F.3d at 466.  It is therefore highly unlikely that the Court would exercise its discretion to abstain from addressing the declaratory claim in this instance.

### 3.  Counts 3 & 4 (Fraud and Constructive Fraud): Statute of limitations

Defendant's first argument for dismissal of the fraud claims is that they were filed outside of the applicable two year statute of limitations. *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838-39 (Va. 2008).  She contends that the cause of action accrued when the Agreement was signed on June 27, 2011, over two years prior to the filing of this suit on September 5, 2013.  Plaintiffs note that the cause of action did not necessarily accrue when the Agreement was signed, as fraud claims accrue "when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." *Id.* (quoting Va. Code § 8.01-249(1)).  They assert that they actually discovered the

17

fraud a little over two months before they filed their federal Complaint, when Mr. Jones "alleged in state court discovery that his wife had no authority to sign the Agreement for him." Opp. at 22.

Defendant's argument is viable therefore only if the fraud reasonably should have been discovered much earlier than it actually was. Defendant does not discuss the discovery rule at all, and as the Fourth Circuit has stated, "[i]f the defendants wished to dispose of the complaint on its face *before* asserting their affirmative defense, on the ground that their affirmative defense was evident in the complaint, they had to show that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). This circumstance should be "relatively rare." *Id.* at 464. Defendant has not made this showing, and has therefore not met her burden at this stage in the litigation. The facts alleged in the Complaint do not foreclose the application of the fraud discovery rule. The Complaint, for example, alleges that the vessel was berthed at the Marina without interruption through at least May 27, 2012, well within two years of the filing of this cause of action. ¶ 16. There is little apparent reason why Plaintiffs would suspect that anything was amiss with the Agreement while the vessel remained at the Marina without incident. Therefore, Defendant's Motion of Dismiss Counts 3 and 4 on statute of limitations grounds is **DENIED**.

### 4. Counts 3 & 4 (Fraud and Constructive Fraud): Failure to plead with specificity

Defendant also argues for dismissal of the fraud claims on the ground that they are pled with insufficient specificity. A claim of actual fraud under Virginia law requires a showing of "a misrepresentation of material fact, knowingly and intentionally made, with the intent to mislead another person, which that person relied upon with the result that he was damaged by it." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 340 (Va. 2008). A claim of constructive fraud requires a showing "that the defendant negligently or innocently made a false representation of

18

material fact, and that the plaintiff suffered damage as a result of his reliance upon that misrepresentation." *Id.* at 341-42.

Fraud claims must satisfy Federal Rule of Civil Procedure 9(b)'s elevated pleading standard. *See Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 468 (D. Md. 2012) (applying Rule 9(b) to state law fraud claims). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The "circumstances" that must be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (quotation omitted). This elevated standard is designed "to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *Id.*

The Complaint pleads with sufficient particularity all of the circumstances outlined in *McCauley*. The alleged misrepresentation was made on June 27, 2011, the day Defendant signed the Agreement, at the Marina. Dkt. No. 1-1, at 3. Defendant was the person making the misrepresentation, and the content of the false representation was that she had the authority to sign the Agreement. Compl. ¶¶ 37-38. Because of this misrepresentation, Defendant allegedly obtained dockage of the vessel at the Marina. Compl. ¶¶ 16-17. The Complaint also explains how Plaintiffs were damaged by their reliance on the alleged fraud. As to Defendant's state of mind, such allegations need only "be pled generally." *Beritelli v. Wells Fargo Bank, N.A.*, Case No. 1:11cv179, 2013 WL 5460179 at *9 (W.D.N.C. Sept. 30, 2013). Compl. ¶¶ 40, 48. All of

19

these allegations satisfy Rule 9(b) and are sufficient to put Defendant on notice of the claims against her so that she can prepare for trial.   Accordingly, Defendant's Motion to Dismiss Counts 3 and 4 for failure to state a claim is **DENIED**.

## IV. CONCLUSION

For the reasons outlined above, Defendant's Motion to Dismiss is **DENIED IN PART AND DEFERRED IN PART**.   Further, Plaintiffs Archie and Linda Allen are **GRANTED** leave to amend the Complaint to sufficiently plead their connection to the contract and tort claims within **FIFTEEN (15) DAYS** of the date of entry of this Order.   Defendant is **ORDERED** to provide notice of this suit and a copy of this Order to Mr. Jones within **FIVE (5) DAYS** of the date of the entry of this Order and certify to the Court that she has complied.   Defendant's Request For a Hearing on her Motion to Dismiss, Dkt. No. 14, is **DENIED**, as a hearing is unnecessary to resolve the instant Motion.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
March _5_ , 2014

_/s/_
Raymond A. Jackson
United States District Judge