

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Newport News Division**

MARINA ONE, INC. d/b/a
JOYS MARINA,

ARCHIE F. ALLEN,

and

LINDA ALLEN

       **Plaintiffs,**

      **v.**                       **CIVIL ACTION NO. 4:13cv117**

JEAN JONES,

      **Defendant.**

### *MEMORANDUM OPINION & ORDER*

Before the Court are motions for summary judgment.  Defendant Jean Jones filed a

Motion for Summary Judgment and Memorandum in Support, ECF Nos. 29 and 30, on

November 5, 2014.  Plaintiff Marina One, Inc. ("Marina One") filed a Motion for Summary

Judgment and Memorandum in Support, ECF Nos. 31 and 32, on November 14, 2014.

Defendant filed a Memorandum in Opposition to Plaintiffs' Motion, ECF No. 34, on November

25, 2014, and Plaintiff filed a Reply, ECF No. 35, on December 1, 2014.  Plaintiffs in this case

are a marina and its owners.  Plaintiffs filed a Complaint against Defendant, an owner of a boat

that was berthed at Plaintiffs' marina.  Defendant's husband is currently involved in ongoing

state court litigation against Plaintiffs for an injury that he sustained at Plaintiffs' marina.

Plaintiffs, who rely on federal admiralty jurisdiction, allege that Defendant breached a slip

1

agreement.  Plaintiffs also seek a declaration that Defendant is obligated to indemnify Plaintiffs in the state court action under that contract.  For the reasons stated below, Plaintiffs' Motion for Summary Judgment is **GRANTED in part and DENIED in part** and Defendant's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Marina One, Inc. is a Virginia corporation and the lessee and operator of Joys Marina in Hampton, Virginia ("the Marina").  Am. Compl. ¶ 4.  Plaintiffs Archie and Linda Allen own the property where the Marina is located and lease it to Marina One.  Am. Compl. ¶ 5.  Additionally, they were the sole shareholders, directors, and officers of Marina One.  Am. Compl. ¶ 6.  Defendant Jean Jones is the co-owner of a 44-foot Sea Ray vessel that was docked at the Marina.  The other owner of the vessel is Defendant's husband, Rick Jones.  Am. Compl. ¶ 8.  Mr. Jones has filed suit in state court against the Plaintiffs and alleges that in May 2012, he suffered personal injury while disembarking from their vessel at the Marina.  Am. Compl. ¶ 20.

Attached to the Amended Complaint is a Slip Lease Agreement ("the Agreement") signed on June 27, 2011, and providing for the dockage of the Jones' vessel at the Marina between July 1, 2011 and June 30, 2012.  Am. Compl., Ex. A.  Rick Jones is listed as the "Lessee," but the Agreement was signed by Defendant.  Above her signature is a certification that the person signing "is the owner of the vessel hereinabove described or is authorized to subj[e]ct such vessel to the provisions of this contract."  *Id.* at 3.  Notably, the Agreement provides that the lessee is required to obtain indemnity insurance in the amount of $300,000 and to list the Marina as an additional insured.  Am. Compl. ¶ 13.  However, when Plaintiffs raised this clause as a defense in Mr. Jones' state court suit, he claimed that he was not bound by the

2

Agreement because Defendant was not authorized to sign the Agreement on his behalf. Am. Compl. ¶ 28.

Plaintiffs raised five claims against Defendant. Count 1 is a claim for declaratory relief, and alleges that Defendant had the authority to bind herself to the Agreement as the owner of the vessel. As such, she is obligated to indemnify the Marina in her husband's state court suit. Count 2 is a breach of contract claim, and alleges that Defendant breached numerous clauses of the Agreement, such as the requirement to maintain the pier in a safe condition and to defend and indemnify the Marina. Count 3 and 4 are actual and constructive fraud claims, and are raised in the alternative to Counts 1 and 2. (Count 4 is also raised in the alternative to Count 3). They allege that Defendant fraudulently misrepresented that she had the authority to sign the Agreement. Count 5, also raised in the alternative to Counts 1 and 2, alleges that Defendant breached the warranty of authority that she made to the Marina.

On March 5, 2014, the Court entered an Order denying in part and deferring in part Defendant's first Motion to Dismiss. ECF No. 15. It denied the Motion to Dismiss on all but two grounds. First, as to Defendant's argument that the Complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join Defendant's husband as a party, the Court ordered Defendant to notify him of this suit and deferred ruling pending any notification of his interest. Second, as to Defendant's claim that the Complaint failed to state claim as to the Allens, the Court granted Plaintiffs leave to amend the Complaint to "sufficiently plead their connection to the contract and tort claims." ECF No. 15, at 20. Plaintiffs filed an Amended Complaint on March 27, 2014, ECF No. 18, and Defendant filed a Motion to Dismiss on April 16, 2014, ECF No. 21. On April 29, 2014, Plaintiffs filed their Memorandum in Opposition, ECF No. 23, and Defendant filed a

3

Reply on May 5, 2014, ECF No. 24.

On May 22, 2014, the Court entered a Memorandum Opinion and Order denying in part and granting in part Defendant's Motion to Dismiss.  ECF No. 26.  The Court denied Defendant's Motion to Dismiss for failure to join Mr. Jones as a party, as Mr. Jones did not provide notice that he wished to claim an interest in this action within the window ordered by the Court.  The Court Granted Defendant's Motion to Dismiss the Allens' claims, Count 6, and the remaining counts to the extent they seek relief for the Allens.  The Court's dismissal on May 22, 2014, was without prejudice.

On November 5, 2014, Defendant Jean Jones filed a Motion for Summary Judgment and Memorandum in Support, ECF Nos. 29 and 30.  Plaintiffs filed a Motion for Summary Judgment, Memorandum in Support of its Motion for Summary Judgment and Memorandum in Opposition to Defendant's Motion for Summary Judgment on November 14, 2014.  ECF Nos. 31 and 32.  Defendant filed a Memorandum in opposition to Plaintiffs' Motion, ECF No. 34, on November 25, 2014, and Plaintiffs filed a Reply, ECF No. 35, on December 1, 2014.  The Court determined that a hearing would not aid in the decisional process, and this matter is now ripe for judicial determination.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); *see also McKinney v. Bd. of Trustees of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and

4

inquiry into the fact is not necessary to clarify the application of the law.") (citations omitted). In deciding a motion for summary judgment, the court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586-87 (internal quotations omitted).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *abrogated on other grounds by*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *see also Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411-12 (4th Cir. 1986) (noting that the nonmoving party must offer more than unsupported speculation to withstand a motion for summary judgment).

The law of admiralty is "[d]rawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules. *East River. S.S. Corp. v. Transamerca Delaval, Inc.*, 476 U.S. 858, 864-65 (1986).  In the contract law context, federal courts construe maritime contracts "like any other contracts:  by their terms and consistent with the intent of the parties." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004).  A court sitting in admiralty may apply state contract law where it does not

conflict with general maritime law. *Norfolk & Portsmouth Belt Line R. Co. v. M/V MARLIN*, 2009 WL 1974298, (E.D. Va. April 3, 2009).

### III. DISCUSSION

The Court first notes that it has jurisdiction over this case. This Court has jurisdiction over this admiralty and maritime case pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Venue is proper in the Eastern District of Virginia because a substantial amount of the events giving rise to this action occurred in the Eastern District of Virginia. The Court has personal jurisdiction over Plaintiff Marina One, as it is a corporation created under the laws of the Commonwealth of Virginia and it operates Joys Marina in the City of Hampton, Virginia. Defendant Jean Jones and her husband Frederick C. Jones own the "Double Eagle" vessel, which was at all pertinent times, docked at Joys Marina in Hampton, Virginia.

### A.  Marina One is a Proper Party

Defendant first argues that Marina One "lacks standing to pursue this action because it is not a party to the contract on which this breach of contract action is based." ECF No. 30 at 9. The Court disagrees, and finds that Marina One does have standing and is a proper party to this case.

This action was filed by "Marina One, Inc. d/b/a Joys Marina." Compl. at 1. The 2011 Slip Lease Agreement was agreed to by Joys Marina, Inc. ECF No. 1-1. The question becomes whether Marina One doing business as Joys Marina may properly bring a lawsuit to enforce a contract allegedly entered into by Joys Marina, Inc.

The entirety of Defendant's argument rests on the belief that Joys Marina, which is a

6

party to this lawsuit, is a separate and distinct legal entity from Joys Marina, Inc., the name atop the Slip Lease Agreement. ECF No. 30 at 9. The law is clear that "any breach of contract action to recover monies on behalf [a] corporation must be brought in its name." *Civil v. UXB Intern.*, 2013 WL 4040815, *1 (W.D. Va. Aug. 8, 2013). It is also true that a corporation is a separate and distinct legal entity. *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002) *certified question answered sub nom. C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3 (Va. 2003); See also *Bogese, Inc. v. State Highway & Transp. Com'r of Virginia*, 250 Va. 226 (Va. 1995). However, slight variances between a corporation's legal name and the name that appears on a contract do not necessarily render a contract or an ensuing lawsuit void. In Virginia, "a misnomer in a corporate name does not invalidate a contract when it is clear what corporation the parties intended." *Lataif v. Commercial Indus. Const., Inc.*, 223 Va. 59, 63(Va. 1982). The United States Supreme Court has observed that, "a contract is not avoided by misnaming the corporation with which it is made." *Page v. United States*, 49 Fed. Cl. 521, 524 (2001) (citing *County of Moultrie v. Fairfield,* 105 U.S. 370, 377 (1881)). Further, "a mere misnomer of a corporation in a written instrument or other business transaction is not material in its consequences 'if the identity of the corporation intended is clear or can be ascertained by proof.'" *Id.* What matters is that, "the identity of the corporation can be reasonably established from the evidence," as courts should not allow a naming error to "frustrate the intent which the name was meant to convey." *Id. See also In re Erin Enterps., Ltd.*, 2014 WL 2621116, *4-5 (E.D.N.C. Bky. June 12, 2014) ("A misnomer does not vitiate, provided the identity of the corporation with that intended by the parties is apparent.").

Defendant argues that Marina One, Inc., the Plaintiff in this case, lacks standing to pursue

this action because the Slip Lease Agreement was between Joys Marina, Inc. and Rick Jones (the agreement was also with Jean Jones as discussed below).  ECF No. 30 at 9.  Exhibit A to the Complaint, ECF No. 1-1, lists "Joys Marina, Inc" in the header.  Defendant concedes that Marina One, Inc. has properly filed a Certificate of Fictitious Name with the State Corporation Commission, but argues that the business is operated as "Joys Marina" and not "Joys Marina, Inc."  Thus, Defendant claims that while Marina One, Inc. and Joys Marina are legally one in the same, Joys Marina, Inc. is a distinct and separate, though non-existent legal entity.  As the Court understands Defendant's argument, if the Slip Lease Agreement read "Joys Marina" at the top instead of "Joys Marina, Inc." Defendants would not be contesting Marina One's standing.

Plaintiffs respond that the name "Joys Marina, Inc." was simply a typographical error. ECF No. 32 at 17.  According to Plaintiffs, Mr. Allen of Marina One testified that "the inclusion of 'Inc.' after 'Joys Marina' was a typographical error.'"  *Id.*  Plaintiffs allege that the Allens simply used a lease that had been used by the previous owners and "never corrected the error." *Id.*

The Court finds Defendant's argument that the 2011 Slip Lease Agreement was made specifically with "Joys Marina, Inc." specious at best.  While the header of the contract clearly said "Joys Marina, Inc.," the bottom of page three refers to the entity as "Joys Marina". Importantly, the "Agreed to" signature line was signed by a representative of "Joys Marina" and not "Joys Marina, Inc."  In fact, the name "Joys Marina, Inc." appears nowhere on the signature page of the agreement. ECF No. 1-1 at 3.  The name "Joys Marina" however, appears twice.  *Id.*

In reviewing cross motions for summary judgment, the Court is required to review each motion individually, and to draw all reasonable inferences in the favor of the non-moving party.

8

Plaintiffs allege that the distinction between "Joys Marina, Inc." and "Joys Marina" on the 2011 Slip Lease Agreement was a mere typographical error. Defendant counters that Jean and Rick Jones never intended to contract with Joys Marina or Marina One, Inc. After a complete review of the record, the Court finds that there exists no genuine dispute of a material fact such that it would be inappropriate to decide this matter at the summary judgment stage. There is no disagreement between the parties that Marina One, Inc. has properly registered Joys Marina as a fictitious name with the Commonwealth of Virginia. ECF No. 30 at 9. It is also undisputed that Joys Marina, Inc. is a non-existent corporation. *Id.* at 11. The ultimate question then becomes whether the name "Joys Marina, Inc." at the top of the 2011 Slip Lease Agreement is a typographical error that can be cured by examining the parties' intent, or whether it is evidence of some sort of deceit on the part of the Plaintiffs.

The Court finds no evidence that Plaintiffs intended to deceive Defendant, and absolutely no evidence in the record that the Joneses were confused about the contracting parties. The Allens own and operate Joys Marina, and they owned and operated the company that was a party to the Jones' contract. Even drawing all inferences in favor of Defendant, the Court cannot reasonably conclude that Defendant was somehow confused about the parties to the agreement or was otherwise misled. Rental checks were made out to "Joys Marina" and the signature line of the contract was labeled "Joys Marina." As the Fourth Circuit has noted, "[i]f [a lawsuit] names [the parties] in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else…" *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947). It is clear to the Court that the Joneses intended to enter a contract

with the Allens and their Queen Street Marina in Hampton Virginia. It is also clear that the marina operated under the name "Joys Marina," and that the name "Joys Marina, Inc." is a misnomer that does not vitiate the contract. The Court therefore finds that Marina One, Inc. and Joys Marina are proper parties to this lawsuit and have standing to sue under the 2011 Slip Lease Agreement.

## B. Jean Jones is a Proper Party

Defendant next argues that she is not personally liable on the 2011 Slip Lease Agreement because she was an agent acting on behalf of her husband, a disclosed principal, and is therefore not liable for claims arising out of the contract. ECF No. 30 at 11. Defendant's argument is without merit, and the Court finds that Defendant is a proper party to the case, and is liable for claims arising out of the contract.

The 2011 Slip Lease Agreement lists Rick Jones as lessee twice on page one. Jean Jones signed the contract as lessee on page three. Jean Jones did not sign as "Jean Jones on behalf of Rick Jones" or "Jean Jones Agent for Rick Jones." Defendant fervently argues that Jean Jones is not personally bound by signing the 2011 Slip Lease Agreement because she did so as her husband's agent. ECF No. 34 at 7. As evidence of her being an agent for her husband, Defendant states,

> Archie Allen testified that on all of his prior dealings with the Jones' and their slip lease agreements, he always dealt with Rick Jones. Allen depo. at 18-19 [sic]. He never talked to Jean Jones about any aspect of the slip lease agreement, other than when he needed Rick Jones to sign the 2011 Slip Lease Agreement. Allen depo. at 22 [sic]. Additionally, the 2011 Slip Lease Agreement itself states that Rick Jones is the Lessee. It does not state that Rick Jones, plus his agent is the Lessee. It does not state that Rick Jones plus his assigns, heirs, or legatees are the Lessee. It states that Rick jones is the Lessee. Period. Importantly, Archie Allen testified that he is not aware of any evidence in which jean Jones agreed to be personally obligated on the 2011

10

> Slip Lease Agreement. Allen depo. at 24. Importantly, Plaintiff has failed to cite any such evidence in its Memorandum. Lastly, in his recent deposition, Rick Jones testified under oath that his wife had his authority at the time she signed the 2011 Slip Lease Agreement. F. Jones. depo. at 34. Under these circumstances, it is clear that Jean Jones was acting as the agent of Rick Jones at the time she signed that 2011 Slip Lease Agreement.

ECF No. 34 at 7. Defendant's final argument on this point is that Rick Jones was a disclosed

principal, and his wife, as his agent, is therefore not bound by the contract.

Plaintiffs counter that Jean Jones signed her own name, did not sign her husband's name,

and therefore bound herself (and her husband) to the terms of the contract. ECF No. 32 at 12.

Jean Jones's name appears on the signature line above the word "Lessee" on page three of the

2011 Slip Lease Agreement. ECF No. 1-1. Further, Plaintiffs highlight the language directly

above Jean Jones's signature on the signature page of the agreement,

> THE PERSON SIGNING BELOW DOES HEREBY CERTIFY THAT THE DESCRIPTION OF THE BOAT SET FORTH ON THE COVER PAGE TO THIS AGREEMENT IS CORRECT AND THAT HE/SHE IS THE OWNER OF THE VESSEL HEREINABOVE DESCRIBED OR IS AUTHORIZED TO SUBJECT SUCH VESSEL TO THE PROVISIONS OF THIS CONTRACT.

The Court finds that the facts and law support a conclusion that Jean Jones bound herself

and her husband to the terms of the 2011 Slip Lease Agreement. There exists no dispute about

Rick Jones being bound to the agreement—the parties agree that he is. The parties debate

whether Jean Jones signed as an agent to her husband, and whether her husband acted as a

disclosed principal. The Court finds it unnecessary to conduct an analysis of whether Jean Jones

signed the contract as an agent of her husband, as she bound *herself* with her signature on page

three of the Slip Lease Agreement.

Even if the Court found that Jean Jones signed as an agent for her husband, she bound

11

both herself and her husband to the contract. Because federal maritime law incorporates general common law rules of agency, *CMA-CGM (Canada), INC. v. World Shippers Consultants, Ltd.*, 921 F. Supp. 2d 1, 6 (E.D.N.Y. 2013), the agent for a disclosed principal may be liable on a contract if "the agent clearly manifests an intent to be so bound 'instead of or in addition to, its principal.'" *Id.* (citing *Ariel Maritime Group, Inc. v. Zust Bachmeier of Switzerland, Inc.*, 762 F. Supp. 55, 60 (S.D.N.Y. 1991)).

ECF No. 1-1.

     Based on the record before the Court, it is clear that Defendant Jean Jones manifested an intent to be bound by the terms of the agreement. When asked at her deposition whether she was signing the contract on behalf of herself or someone else, she stated, "I was signing on behalf of the Joneses." ECF No. 32 at 11. As to the question of whether Jean Jones was acting as an agent for her husband, she said the issue "didn't even occur to me" because "I sign things all the time" that bind the couple as a husband and wife. *Id.* at 12. Defendant counters that "'[i]t was perfectly reasonable to assume Jean Jones had her husband's authority to sign the lease on his behalf.'" ECF No.34 at 9. The Court finds that statement to be simply conclusory—there is no evidence in the record that supports a true agent/principal relationship between Jean and Rick Jones. Instead, the Court finds that Jean Jones signed the contract on behalf of herself and her husband as a couple, and that she therefore bound herself and her husband to its terms. The names of both Jean Jones and Rick Jones appear in various parts of the contract on the lines labeled "lessee," and Jean Jones ultimately signed the signature page of the document. Further, Defendant repeatedly noted that "we" signed the lease when referring to the contract between herself, her husband, and Joys Marina. ECF No. 32 at 13. Therefore, Jean Jones is a proper

12

Defendant in this case and may be found liable for any breach under the contract.

To allow Jean Jones to now escape liability would amount to unjust enrichment. Both Defendant and her husband moored their boat at the marina, both had access to the marina, and they paid rent together. The Fourth Circuit has recognized that estoppel to avoid unjust enrichment operates in maritime law as it does generally. *Hawkspere Shipping C., Ltd. V. Intamex,* S.A. 330 F.3d 225, 239 (4th Cir. 2003); *Flame S.A. v.Indus. Carriers, Inc.,* __F. Supp. 2d__, No. 2:13cv68 (E.D. Va. May 20, 2014), aff'd, 762 F.3d 352 (4th Cir. 2014). The Court finds that Jean Jones and Rick Jones knew that they were contracting with Joys Marina, that both enjoyed the benefits of the contract, and the Jean Jones manifested an intent to bind herself and her husband to the terms of the agreement. Therefore, Defendant is estopped from now denying the validity of the agreement generally, and the validity of the agreement as applied to her.

## C. Declaratory Judgment

For the reasons stated above, the Court finds it appropriate to grant Plaintiffs declaratory relief. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1985). The Court finds that Jean Jones is a party to the 2011 Slip Lease Agreement that she signed with Joys Marina and she is therefore bound to its terms and conditions.

## D. Breach of Contract

The Court further finds that the record supports Plaintiffs' breach of contract claim. The language in the Slip Lease Agreement plainly conveys that the marina's limit of liability extends to its own negligence. *See* ECF No. 1-1 at 2 ("Notwithstanding any other provisions of this

13

Agreement, lessee expressly releases the Marina and agrees to hold the Marina harmless for any and all claims for injury or death…unless such liability, damage or expense is due to the gross negligence or willful misconduct of the Marina."). This exculpatory clause is enforceable as it is "expressed clearly, entered into freely by parties of equal bargaining power, and [does] not provide for a total absolution of liability." *MP Leasing Corp. v. Colonna's Shipyard*, 2009 WL 2581575, \*7 (E.D. Va. May 8, 2009). Defendant notes that some courts have analyzed whether the release specifically mentions that it pertains only to the drafter's simple negligence, or whether the clause appears in all caps or bold font. ECF No. 30 at 14-15. However, it is not the case under federal maritime law or in the Fourth Circuit that any of the factors Defendant mentions are dispositive of the question of whether the pre-injury release is enforceable. Defendant breached the 2011 Slip Lease Agreement when she failed to comply with Sections 4 and 9(E) of the Slip Lease Agreement. Therefore, the Court **FINDS FOR PLAINTIFFS** on the Breach of Contract claim.

### E. Attorneys' Fees and Damages

Plaintiffs move this Court to order Defendant to pay for the defense and future settlement or liability expenses of Joys Marina in the state court action. The state court action will proceed once the stay is lifted, and it will be within the purview of the state court to determine the amount of fees and associated costs, if any, that either party is entitled. This Court has already found that Defendant is a proper party to a valid and enforceable contract, and that Defendant breached that contract. However, the record is not clear that a proper award of damages can be calculated, and the Court therefore refuses to award damages.

For all of these reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED** on

14

Counts I and II.  Granting Plaintiffs' Motion on Counts I and II obviates the need for the Court to grant or deny summary judgment on Counts III and IV.  Plaintiffs' Motion for Summary Judgment is **DENIED** on Count V.  Defendant's Motion for Summary Judgment is **DENIED** in its entirety and **JUDGMENT IS ENTERED** for Plaintiffs.

## IV. CONCLUSION

For the reasons outlined above, Plaintiffs' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.  Defendant's Motion for Summary Judgment is **DENIED** and **JUDGMENT IS ENTERED** for Plaintiffs.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
April 3, 2015

Raymond A. Jackson
United States District Judge

15